UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
GREGORY JOHNSON,

                      Petitioner,

          - against -

ROBERT MORTON, JR.,

                   Respondent.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-1777 (PKC)

PAMELA K. CHEN, United States District Judge:

      Petitioner Gregory Johnson, appearing *pro se*,[1] petitions this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his convictions for murder in the second degree, attempted robbery in the first and second degree, criminal possession of a weapon in the second degree, and tampering with physical evidence.[2]  For the reasons set forth below, the petition is denied in its entirety.

**BACKGROUND**

I.    **Facts**[3]

      On the night of January 8, 2010, Petitioner and Authur Lattan attempted to rob Petitioner's boss at Crosslands Transportation Company ("Crosslands"), the limousine company where

---

[1] Because Petitioner is *pro se*, the Court liberally construes his petition and interprets it "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and italics omitted).  However, the Court notes that it "need not act as an advocate for" Petitioner.  *Curry v. Kerik*, 163 F. Supp. 2d 232, 235 (S.D.N.Y. 2001) (quoting *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998)).

[2] Petitioner does not challenge the sentences he received based on these convictions.

[3] Because Petitioner was convicted, the Court construes the facts in the light most favorable to Respondent.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."); *Cruz v. Colvin*, No. 17-CV-

1

Petitioner was employed in Queens, New York. (Trial Transcript ("Tr."), Dkt. 7-7, at ECF[4] 1241–42; *id.*, Dkt. 7-8, at ECF 1256–60, 1262–63; *id.*, Dkt. 7-9, at ECF 1422; State Court Record ("R."), Dkt. 7-1, at ECF 307–10.) Jaroslaw Bielawski, another Crosslands employee, was taking Petitioner's boss and the general manager for Crosslands, Mamdouh Elsayed, home in a Crosslands black Lincoln Town Car when a car with Pennsylvania license plates double-parked beside them. (*Id.*, Dkt. 7-8, at ECF 1256–57; *see also id.*, Dkt. 7-7, at ECF 1240, 1243–44.) Petitioner and Lattan, wearing masks and gloves, emerged from the car. (*Id.*, Dkt. 7-8, at ECF 1257.) Petitioner approached the driver's side of the Lincoln Town Car while Lattan approached the other side. (*Id.*) As Bielawski tried to drive away, Petitioner's arm got caught in the window and the gun he was holding fired, fatally shooting Bielawski and causing the car to crash into a wall across the street. (*Id.*, Dkt. 7-7, at ECF 1212.) Elsayed called 911 from within the car while Petitioner fled the scene in the car with the Pennsylvania license plates and Lattan fled in the opposite direction on foot. (*Id.*, Dkt. 7-8, at ECF 1259–60.) Bielawski was pronounced dead at Cornell University Hospital the next day. (*Id.*, Dkt. 7-6, at ECF 1066–67.)

Video surveillance showed Petitioner and Lattan getting out of a car that had been sitting north of Crosslands for nearly three hours, and also showed one of the perpetrators dropping a face mask while attempting to flee north after the shooting. (*Id.*, Dkt. 7-6, at ECF 1048, 1072.) After viewing the video, New York City Police Department ("NYPD") Detective Victor Herrera called a canine unit and recovered a pair of gloves in an alleyway nearby. (*Id.* at ECF 1048–49.) NYPD Detective William Brown also recovered a face mask and a pair of white fabric gloves with red

3757 (JFB), 2019 WL 3817136, at *12 (E.D.N.Y. Aug. 14, 2019) (citing, *inter alia*, *Jackson* and *Ponnapula*).

[4] Citations to "ECF" refer to the "PageID" number generated by the Court's CM/ECF docketing system and not the document's internal pagination.

palms in a nearby alley, with one of the gloves containing a rubber or latex glove inside. (*Id.* at ECF 968.) Another ripped latex or rubber glove was recovered in the same alley and on the street nearby. (*Id.*)

## II.  Investigation

On April 9, 2010, NYPD Detective David Beutel received a DNA match for Arthur Lattan from the evidence recovered at the crime scene. (*Id.*, Dkt. 7-6, at ECF 1075.) After an investigation into Lattan's whereabouts, Lattan was arrested on April 20, 2010 and interviewed by Detective Beutel. (*Id.* at ECF 1076–78; *id.*, Dkt. 7-7, at ECF 1131–32.) Lattan told Beutel that someone named "G" of Jamaican descent had committed the attempted robbery and murder with him. (*Id.*, Dkt. 7-7, at ECF 1131–33, 1140–41, 1186.) With this information, Beutel contacted Elsayed, who told Beutel that he had a Jamaican employee named Gregory Johnson, *i.e.*, Petitioner. (*Id.* at ECF 1131–33, 1135–36, 1141.) Beutel asked Elsayed to call the precinct if Petitioner came to work. (*Id.*, Dkt. 7-6, at ECF 1079.)

Early in the morning of April 21, 2010, based on the information he obtained from Elsayed, Beutel showed Lattan a photo array that included a picture of Petitioner. (*Id.*, Dkt. 7-2, at ECF 385). Lattan identified Petitioner as "G" and said that "G" was the one who had shot Bielawski. (*Id.*) Later that day, Elsayed called to let Beutel know that Petitioner had arrived at work. (*Id.*, Dkt. 7-7, at ECF 1145.) In response, NYPD Detectives Keough and Edwin[5] went to Crosslands and asked Petitioner to come with them to the precinct, which Petitioner did.[6] (*Id.*, Dkt. 7-2, at

---

[5] The first names of Detectives Keough and Edwin are not specified in the record provided to the Court.

[6] At trial, it was unclear whether Petitioner was under arrest at this point or whether he was only arrested after confessing at the precinct. (*See* Tr., Dkt. 7-7, at ECF 1146–53.) However, for the reasons discussed *infra*, the Court, assuming *arguendo* that Petitioner was under arrest when he was escorted by the police from Crosslands, finds that there was probable cause to arrest Petitioner at that point.

ECF 387–88; *see also id.*, Dkt. 7-7, at ECF 1145.) Beutel read Petitioner his *Miranda* rights. (*Id.*, Dkt. 7-7, at ECF 1157.)

At first, Petitioner stated a "black guy" had stopped by his Brooklyn home before going to rob Elsayed and that Petitioner had stayed in Brooklyn while Lattan and the unidentified "black guy" went to commit the planned robbery. (*Id.* at ECF 1205–06.) However, upon further questioning, Petitioner told the detectives that he had accompanied Lattan and the "black guy" to Queens, and that he was left on another street while the other two "went to do it." (*Id.* at ECF 1208–09.) Eventually, after further questioning about the logic of his story, Petitioner confessed to his full role in the June 8, 2010 murder and attempted robbery, admitting that he was the one who had fired the gun when his hand got stuck in the window of the Lincoln Town Car. (*Id.* at ECF 1210–12.) Petitioner memorialized his confession in a written statement and on videotape. (*Id.*, Dkt. 7-6, at ECF 1094; *id.*, Dkt. 7-7, at ECF 1176, 1213–14.) Petitioner was charged, under Queens County Indictment Number 1262/2010, with Murder in the First Degree, two counts of Murder in the Second Degree, two counts of Attempted Robbery in the First Degree, Attempted Robbery in the Second Degree, two counts of Criminal Possession of a Weapon in the Second Degree, and three counts of Tampering with Physical Evidence. (Tr., Dkt. 7-9, at ECF 1513–17; *id.*, Dkt. 7-10, at ECF 1518–33; *see also* Respondent's Affidavit in Opposition to Petition for a Writ of *Habeas Corpus* ("Resp.'s Aff."). Dkt. 4, ¶ 5.)

## III. Trial

Petitioner's jury trial was held over the course of 14 days, between May 13, 2013 and June 3, 2013, before Justice Daniel Lewis, Supreme Court, Queens County.[7] (Tr., Dkt. 7-3, at ECF

---

[7] Specifically, Petitioner's trial was held on: May 13–16, 20–24, 28–31, and June 3, 2013. (Tr., Dkt. 7-3, at ECF 601.)

601.)  Prior to the trial, Justice Buchter held a *Mapp/Huntley/Dunaway*[8] hearing[9] to determine whether, *inter alia*, there was probable cause for Petitioner's arrest and whether Petitioner's property was unconstitutionally seized.  (*Id.*, Dkt. 7-2, at ECF 354–55, 357–58.)  About halfway through the hearing, Petitioner requested and was granted permission to proceed *pro se*.  (*Id.* at ECF 483–90.)  At the conclusion of the hearing, Justice Buchter found, *inter alia*, that Petitioner's arrest was supported by probable cause and that the recovery of Petitioner's cell phone was the lawful result of a search incident to arrest.  (*Id.*, Dkt. 7-3, at ECF 554–55.)

At the trial, the prosecution presented nine witnesses, including Mamdouh Elsayed, who testified to the events of June 8, 2010.  (*See id.*, Dkt. 7-7, at ECF 1239–51; *id.*, Dkt. 7-8, at ECF 1252–68.)  The prosecution also called several police officers and a medical examiner, who all testified to the state of the crime scene and their subsequent investigation.  (*See id.*, Dkt. 7-6, at ECF 962–1012 (Detective William Brown testimony), ECF 1012–22 (Detective Daniel Mulvanerty testimony), ECF 1026–36 (Detective Keith Wels testimony), ECF 1037–50 (Detective Victor Herrera testimony), ECF 1050–54 (Detective Michael Avery testimony), ECF 1061–99 (Detective David Beutel testimony); *id.*, Dkt. 7-7, at ECF 1105–87 (Detective David Beutel

---

[8] Such a hearing is held

pursuant to: (1) *Mapp v. Ohio*, 367 U.S. 643 (1961), to determine whether physical evidence sought to be used against Petitioner was obtained illegally; (2) *Dunaway v. New York*, 442 U.S. 200 (1979), to determine whether there was probable cause for Petitioner's arrest; and (3) *People v. Huntley*, 15 N.Y.2d 72 (1965), to determine whether any statements made by Petitioner should be suppressed.

*McKelvey v. Bradt*, No. 13-CV-3527 (CM) (DF), 2016 WL 3681457, at *4 n.3 (S.D.N.Y. July 6, 2016).

[9] The hearing was held over eight days, on February 22, February 23, February 29, May 3, June 25, June 27, September 5, and December 17, 2012.  (Tr., Dkt 7-2, at ECF 354, 373, 416, 430, 470, 482, 493; *id.*, Dkt. 7-3, at ECF 514.)

testimony, continued), ECF 1188–94, 1200–38 (Detective Edward Wilkowski testimony); *id.*, Dkt. 7-8, at ECF 1285–1311 (Medical Examiner Darius Arabadjief).)

Petitioner, who was represented by counsel at trial (*id.*, Dkt. 7-3, at ECF 590–91), testified in his own defense. (*Id.*, Dkt. 7-8, at ECF 1324–70.) He testified that though he admitted to participating in the murder and attempted robbery to Detective Beutel, he was not actually involved with the events of June 8, 2010. (*Id.* at ECF 1345; *see also id.* at ECF 1352–53 (acknowledging his confession, but denying any involvement in the attempted robbery).) Petitioner further testified that he had falsely admitted to participating in the robbery and shooting because he knew that Lattan was involved in a gang, and Petitioner "[did] not want any problems with him and that gang." (*Id.* at ECF 1346.)

The jury found Petitioner guilty of two counts of murder in the second degree, two counts of attempted robbery in the first degree, one count of attempted robbery in the second degree, two counts of criminal possession of a weapon in the second degree, and three counts of tampering with physical evidence.[10] (*Id.*, Dkt. 7-10, at ECF 1584–86.) Petitioner was sentenced to concurrent indeterminate terms of imprisonment of twenty years to life for each murder count and one to three years for each count of tampering with physical evidence. (*Id.* at ECF 1616–21.) He was also sentenced to determinate terms of imprisonment of twelve years and five years post-release supervision for each count of attempted robbery in the first degree and weapon possession, as well as six years of imprisonment and five years post-release supervision for attempted robbery in the second degree. (*Id.*) All of these sentences were imposed to run concurrently. (*Id.*)

---

[10] Petitioner was acquitted of murder in the first degree and manslaughter in the first degree. (*Id.*, Dkt. 7-10, at ECF 1586.)

## IV.   Procedural History

### A.   State Court Post-Trial Applications

Petitioner appealed his conviction to the New York Appellate Division, Second Department ("Second Department"). (*See generally* R., Dkt. 7, at ECF 50–86.) In his counseled brief, Petitioner's counsel argued that (1) the prosecution's use of Powerpoint slides during summation deprived him of due process; (2) the trial court's failure to grant a mistrial after the jury returned a "legally repugnant in part and generally illogical" verdict deprived him of due process; and (3) his sentence should be reduced. (*See id.* at ECF 74–84.) Petitioner also submitted a *pro se* supplemental brief in which he argued that (1) the trial court had relied on contradictory facts in determining that probable cause existed for Petitioner's arrest; (2) the police lacked probable cause for his arrest because the statements provided by Lattan did not satisfy the *Aguilar-Spinelli* test; (3) the police unconstitutionally seized Petitioner because they exceeded the temporary stop allowed by *Terry v. Ohio*; (4) the trial court erred by not suppressing his statements to the police because his arrest was not supported by probable cause; and (5) the trial court erred by not suppressing his statements to the police because they were elicited in violation of his *Miranda* rights. (*See id.* at ECF 173–201.) On March 14, 2018, the Second Department affirmed Petitioner's judgment of conviction and denied all of Petitioner's claims. *See People v. Johnson*, 72 N.Y.S.3d 536 (N.Y. App. Div. 2018). Petitioner sought leave to appeal to the New York Court of Appeals (R., Dkt. 7, at ECF 238–40), which denied his request on June 29, 2018. *See People v. Johnson*, 106 N.E.3d 761 (N.Y. 2018).

On April 16, 2018, Petitioner moved, *pro se*, for a writ of error *coram nobis*. (R., Dkt. 7, at ECF 247–54; *see also id.*, Dkt. 7-1, at ECF 255–59.) He argued that his right to effective assistance of appellate counsel was denied because his counsel should have raised the arguments that (1) the police lacked probable cause to arrest Petitioner; and (2) "[t]he recovery of the property

from [Petitioner], to wit, a cell-phone was not the lawful result of a search incident to [Petitioner's] lawful arrest and custody." (*Id.*, Dkt. 7, at ECF 251.) The Second Department denied Petitioner's application on September 26, 2018. *See People v. Johnson*, 81 N.Y.S.3d 908 (N.Y. App. Div. 2018). He sought a leave to appeal to the New York Court of Appeals (R., Dkt. 7-1, at ECF 284–346), which denied his request on November 30, 2018. *See People v. Johnson*, 115 N.E.3d 635 (N.Y. 2018).

### B.    Instant *Habeas* Petition

Petitioner filed the instant *habeas* petition on March 28, 2019, claiming that his appellate counsel was ineffective for failing to argue that the police lacked probable cause to arrest Petitioner, and that the recovery of his cell phone was not the result of a search incident to lawful arrest. (Petition, Dkt. 1, at ECF 5.) On July 25, 2019, Petitioner filed a letter requesting to add another claim to his petition—this one alleging appellate counsel's ineffectiveness for not raising the ineffectiveness of Petitioner's trial counsel for not preserving the probable cause issue for appeal—as well as a stay to allow him to exhaust this additional claim in state court. (Letter Motion, Dkt. 8; *see also* July 31, 2019 Order (construing Petitioner's letter motion as both a motion to amend and a motion to stay).) The Court granted Petitioner's motion to amend his petition, but denied his motion for a stay. (*See* July 31, 2019 Order (citing 28 U.S.C. § 2254(b)(2); *Gandarilla v. Artuz*, 322 F.3d 182, 186 (2d Cir. 2003)) (noting that the Court may deny an unexhausted claim on the merits).)

### LEGAL STANDARD

Section 2254 provides that a *habeas corpus* application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002) (internal quotation marks and citation omitted). "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289, 301 (2013); *see also id.* at 301–02 (explaining that "the presumption that the federal claim was adjudicated on the merits may be rebutted" by either (1) "the habeas petitioner (for the purpose of showing that the claim should be considered by the federal court *de novo*)," or (2) "the State (for the purpose of showing that the federal claim should be regarded as procedurally defaulted)").

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation marks and citation omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" Supreme Court cases, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (internal quotation marks and citation omitted).

A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (internal quotation marks and citation omitted). The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of

review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)); *see also Eze v. Senkowski*, 321 F.3d 110, 121 (2d Cir. 2003) (observing that, where a state court adjudicates a federal constitutional claim on the merits, "we must apply AEDPA deference"). "An unreasonable application occurs when . . . 'the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement[.]'" *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (second alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## DISCUSSION

Petitioner seeks federal *habeas* relief based on claims of ineffective assistance of his appellate counsel.

## I.     Ineffective Assistance of Counsel Standard

"The Supreme Court in *Strickland* set forth a two-part test for evaluating claims of ineffective assistance of counsel. To warrant relief, a defendant must demonstrate both 'that counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Under *Strickland*'s first prong, counsel's conduct falls to the level of being deficient if 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed

the defendant by the Sixth Amendment.'" *Eze*, 321 F.3d at 125 (quoting *Strickland*, 466 U.S. at 687). Under the second prong, a counsel's conduct prejudiced the defense if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 123 (quoting *Strickland*, 466 U.S. at 688, 694).

"To prevail [on an ineffective-assistance claim], a defendant must establish both of *Strickland*'s prongs because, otherwise, 'it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the process unreliable, and the sentence or conviction should stand.'" *Id.* (quoting *Bell v. Cone*, 535 U.S. 685, 695 (2002)). Furthermore, "our scrutiny of counsel's performance must be 'highly deferential' because we must apply 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015) (quoting *Strickland*, 466 U.S. at 689).

"This [*Strickland*] test applies in the appellate context as well as at trial." *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (citing, *inter alia*, *Smith v. Robbins*, 528 U.S. 259, 285 (2000)). "[Appellate] counsel has no duty to raise every non-frivolous issue that could be raised. Nevertheless, appellate counsel's performance must meet prevailing professional norms." *Id.* (internal citations omitted.) "Thus, a petitioner asserting a claim of ineffective assistance of appellate counsel must show both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal and that, but for counsel's malfeasance, there was a reasonable probability that defendant's appeal would have been successful." *Hicks v. Ercole*, No. 09-CV-2531 (AJN), 2015 WL 1266800, at *21 (S.D.N.Y. Mar. 18, 2015).

## II.    Petitioner's Ineffective Assistance of Appellate Counsel Claims Are Without Merit

Petitioner argues that his appellate counsel was ineffective for failing to raise three arguments on direct appeal. First, Petitioner argues that appellate counsel was ineffective because

counsel did not argue that the police lacked probable cause to arrest Petitioner.  (Petition, Dkt. 1, at ECF 5.)  Second, Petitioner argues that appellate counsel was ineffective for failing to argue that Petitioner's cell phone was improperly seized.  (*Id.*)  Finally, Petitioner argues that appellate counsel was ineffective for neglecting to argue that Petitioner's trial counsel was ineffective for failing to preserve the claim that there was no probable cause for Petitioner's arrest.  (Letter Motion, Dkt. 8, at ECF 1622.)  The Court address each claim in turn.

### A.     Failure to Argue Lack of Probable Cause for Petitioner's Arrest

Petitioner first argues that his appellate counsel's performance was deficient because counsel did not argue on appeal that "[t]he police lacked probable cause to arrest the [Petitioner]." (Petition, Dkt. 1, at ECF 5.)  Because the Second Department rejected this ineffective assistance claim, raised in Petitioner's *pro se* writ of error *coram nobis* petition, on the merits, *see Johnson*, 81 N.Y.S.3d at 909, that court's decision is entitled to AEDPA deference.  *See* 28 U.S.C. § 2254(d); *Eze*, 321 F.3d at 121; *see also Jenkins v. Artuz*, 294 F.3d 284, 291 (2d Cir. 2002) (noting that "an even more concise Appellate Division disposition—the word 'denied'—trigger[s] AEDPA deference").

Petitioner's claim fails because he is unable to show either that his appellate counsel was deficient in failing to raise this claim or that Petitioner was prejudiced by this failure.  "[I]t is well established that an appellate attorney has no duty to raise every possible issue on appeal." *Hall v. Le Claire*, No. 10-CV-3877 (LAP), 2015 WL 6395869, at *7 (S.D.N.Y. Oct. 21, 2015) (citing *Lynch*, 789 F.3d at 311).  "[T]o prevail on an ineffective assistance of appellate counsel claim, petitioner must show that his lawyer 'omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" *Roberts v. Griffin*, No. 16-CV-5970 (ENV), 2019 WL 456179, at *10 (E.D.N.Y. Feb. 5, 2019) (quoting *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000)); *see also Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  Plaintiff is unable to do so

here.  Though Petitioner's counsel did not raise this probable cause claim on appeal, Petitioner did include it in his *pro se* supplemental brief.  (*Compare* R., Dkt. 7, at ECF 51, *with id*. at ECF 176–85.)  As a result, the Second Department considered this probable cause claim and found it deficient because it was unpreserved for appellate review.  *See Johnson*, 72 N.Y.S.3d at 538 ("The defendant's remaining contentions, including those raised in his pro se supplemental brief, are unpreserved for appellate review . . . .").  The Second Department's rejection of this claim as procedurally barred demonstrates that it is meritless.  "'[F]ailure to make a meritless argument does not amount to ineffective assistance.'"  *Hewitt v. Annucci*, No. 13-CV-7505 (NSR), 2019 WL 975312, at *4 (S.D.N.Y. Feb. 28, 2019) (quoting *United States v. Nosov*, 526 F. App'x 127, 129 (2d Cir. 2008) (summary order)).

Moreover, Petitioner is unable to demonstrate prejudice.  "[P]etitioner cannot assert ineffective assistance of appellate counsel based on counsel's failure to raise this argument because [P]etitioner raised it [him]self in h[is] supplemental *pro se* brief."  *Word v. Lord*, No. 00-CV-5510 (LAP) (HBP), 2002 WL 32145769, at *14 (S.D.N.Y. Mar. 20, 2002) (discussing *Hightower v. Kelly*, 657 F. Supp. 516 (S.D.N.Y. 1987), *report and recommendation adopted*, 2002 WL 31119432 (S.D.N.Y. Sept. 24, 2002)); *see also Hightower*, 657 F. Supp at 517 ("[P]etitioner failed to demonstrate prejudice because all of the arguments petitioner claims his counsel should have raised on appeal were actually raised, either by counsel or by petitioner himself in his *pro se* brief to the Appellate Division.").  Any claim of prejudice is similarly foreclosed by the Second Department's actual consideration, and rejection, of Petitioner's probable cause argument.  *See Hall*, 2015 WL 6395869, at *7 (holding that the petitioner "does not establish prejudice as required by *Strickland*, particularly given that the state Appellate Division considered the claims made in his *pro se* brief and rejected them on their merits").  As the court found in *Sweeney v. Laffin*,

"[s]ince Petitioner himself raised these assertions as part of his direct appeal and the Appellate Division affirmed his conviction, there is no reasonable possibility that if appellate counsel had raised these assertions of ineffective assistance of counsel on direct appeal, the result of Petitioner's appeal would have been different."  No. 12-CV-6483 (KMK) (LMS), 2016 WL 9736116, at *8 (S.D.N.Y. Aug. 8, 2016), *report and recommendation adopted*, 2017 WL 4342138 (S.D.N.Y. Sept. 28, 2017).

Accordingly, the Court finds that the Second Department's rejection of Petitioner's claim of ineffective assistance of appellate counsel—based on the failure to argue a lack of probable cause for Petitioner's arrest—was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state trial proceedings. *See, e.g.*, *Washington*, 876 F.3d at 403.  *Habeas* relief is thus denied on this claim.

### B.      Failure to Argue Improper Seizure of Petitioner's Cellphone

Petitioner also asserts that his appellate counsel was ineffective for failing to argue on appeal that "[t]he recovery of the cell phone from [Petitioner] was not the result of a search incident to a lawful arrest."  (Petition, Dkt. 1, at ECF 5.)  Because the Second Department rejected on the merits this ineffective assistance claim, raised in Petitioner's writ of error *coram nobis* petition, *see Johnson*, 81 N.Y.S.3d at 909, that court's decision is entitled to AEDPA deference.  *See* 28 U.S.C. § 2254(d); *Eze*, 321 F.3d at 121; *see also Jenkins*, 294 F.3d at 291 (2d Cir. 2002).

Petitioner's claim fails for the same reasons discussed *supra*.  Petitioner included this ineffective assistance claim in his *pro se* brief (*see* R., Dkt. 7, at ECF 190), which was rejected by the Second Department because it was not preserved for appellate review, *see Johnson*, 72 N.Y.S.3d at 538.  Accordingly, Petitioner is unable to show that his appellate counsel was deficient, since "failure to make a meritless argument does not amount to ineffective assistance,"

*Hewitt*, 2019 WL 975312, at \*4 (internal quotation marks and citation omitted), or that he was prejudiced by appellate counsel's failure, "given that the [Second Department] considered the claims made in his *pro se* brief and rejected them on their merits[,]" *Hall*, 2015 WL 6395869, at \*7.

Furthermore, Petitioner is unable to show prejudice for two additional reasons. First, in light of the fact that Petitioner's arrest was supported by probable cause, for the reasons discussed *infra*, the police's seizure of Petitioner's phone was a legal search incident to arrest. *See, e.g.*, *United States v. Herron*, 18 F. Supp. 3d 214, 223 (E.D.N.Y. 2014) ("[W]here police officers have probable cause to effect a custodial arrest, they may search the suspect without a warrant incident to that arrest.") (citing *United States v. Robinson*, 414 U.S. 218 (1973)). Second, though the police seized Petitioner's phone at the precinct, the prosecutor did not introduce the phone or anything obtained from the phone as evidence during Petitioner's trial. (*See* Tr., Dkt. 7-5, at ECF 934–55; *id.*, Dkt. 7-6, at ECF 956–58 (describing the evidence that will be introduced at trial without mentioning Petitioner's cell phone or its contents); *see also id.*, Dkt. 7-9, at ECF 1421–83 (describing the evidence introduced at trial without mentioning Petitioner's cell phone or its contents).) Therefore, Petitioner has not demonstrated that the outcome of his case would have been different had the Second Department considered the substance of Petitioner's improper seizure claim.

Accordingly, the Court finds that the Second Department's rejection of Petitioner's ineffective assistance of appellate counsel claim—based on the failure to argue that Petitioner's cell phone was unconstitutionally seized—was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent; nor was it based on an unreasonable

determination of the facts in light of the evidence presented in the state trial proceedings. *See, e.g.*, *Washington*, 876 F.3d at 403. *Habeas* relief is thus denied on this claim.

### C. Failure to Argue That Petitioner's Trial Counsel Was Ineffective

Finally, Petitioner also argues that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective, based on trial counsel's failure to "perceive, raise, and preserve the claim that [Petitioner] was arrested without probable cause."[11] (Petitioner's Memorandum of Law ("Pet.'s Br."), Dkt. 11, at ECF 1646); *see also Johnson*, 72 N.Y.S.3d at 538 (holding that Petitioner's claims, including, *inter alia*, that the police lacked probable cause for his arrest, were unpreserved for appellate review). Despite requesting a stay to pursue additional post-conviction remedies in state court, it does not appear that Petitioner raised this ineffective assistance claim in any state briefing. (Letter Motion, Dkt. 8, at ECF 1622 (asking the Court to stay proceedings so Petitioner could exhaust the instant claim in state court); Resp.'s Supp. Aff., Dkt. 9, at ¶ 3.) Petitioner's claim is therefore unexhausted because "state prisoners must give the state courts *one full opportunity* to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (emphasis in original) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999));

---

[11] Though Petitioner argues that his trial counsel was ineffective for failing to "perceive" and "raise" this argument at trial, the Court notes that Petitioner's trial counsel did file a pre-trial omnibus motion that included a request for a "[a] pre-trial '*Huntley/Dunaway*' type hearing to determine whether there existed probable cause to arrest the [Petitioner]." (Respondent's Supplemental Affidavit in Opposition ("Resp.'s Supp. Aff."), Dkt. 9, at ECF 1631); *see also McClary v. Conway*, No. 06-CV-2064 (ENV), 2010 WL 3928563, at *4 n.2 (E.D.N.Y. Oct. 4, 2010) ("A pre-trial hearing held pursuant to *Dunaway v. New York*, 442 U.S. 200 (1979), is used to determine whether probable cause existed for a defendant's arrest."), *aff'd*, 492 F. App'x 157 (2d Cir. 2012) (summary order). Furthermore, to the extent that Petitioner argues that this specific argument was not raised at the *Dunaway* hearing, the Court notes that Petitioner had requested and was granted permission to proceed *pro se* halfway through that hearing. (*See* R., Dkt. 7-2, at ECF 483–90.) Presumably then, it was Petitioner's responsibility to raise this argument at the end of the presentation of evidence and/or preserve it for appellate review given that Petitioner was representing himself by the conclusion of the hearing.

*see also Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) ("Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

Generally, "before a federal court can consider a habeas application brought by a state prisoner, the habeas applicant must exhaust all of his state remedies." *Carvajal*, 633 F.3d at 104 (citing 28 U.S.C. § 2254(b)(1)(A)). Unexhausted claims can be denied on the merits only if they are "unquestionably meritless." *Ricks v. Superintendent of Marcy Corr. Facility*, No. 10-CV-0785 (MAT), 2012 WL 162608, at *2 (W.D.N.Y. Jan. 19, 2012) (quoting *Keating v. New York*, 708 F. Supp. 2d 292, 299 n.11 (E.D.N.Y. 2010)); *see also Warren v. Goord*, No. 06-CV-1423 (RRM), 2013 WL 1310465, at *11 (E.D.N.Y. Mar. 28, 2013) ("Though neither the Supreme Court nor the Second Circuit has established a standard to guide the exercise of this discretion, many courts in this Circuit have denied unexhausted claims upon a determination that they are patently frivolous."); *Naranjo v. Filion*, No. 02-CV-5449 (WHP) (AJP), 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003) (collecting cases). Accordingly, the Court will address Petitioner's remaining claim to determine if it is meritless and may be dismissed, even though it is unexhausted.

Petitioner argues that his trial counsel was deficient for failing to preserve the specific argument that "the police lacked probable cause to arrest [Petitioner] where the only evidence leading to his arrest were the hearsay statements of an untrustworthy individual [Lattan,] whose statements were made in an attempt to exculpate himself from a homicide charge while implicating [Petitioner] in the crime and failed the reliability prong of the Aguilar-Spinelli rule." (Pet.'s Br., Dkt. 11, at ECF 1650.) "*Aguilar v. Texas* and *Spinelli v. United States* established a two-pronged analysis for assessing the sufficiency of informants' tips. That analysis looks first to the veracity

of the informant and second to the reliability of the informant's information." *Morgan v. Superintendent*, 88 F. Supp. 2d 312, 316 (S.D.N.Y. 2000) (footnotes omitted); *see also People v. Johnson*, 488 N.E.2d 439, 442 (N.Y. 1985) ("[B]efore probable cause based on hearsay is found it must appear, in the language of the *Aguilar-Spinelli* rules, that the informant has some basis of knowledge for the information he transmitted to the police and that the information is reliable[.]").[12] Petitioner argues that the police could not rely on Lattan's statement to establish probable cause because "on this record no reasonable inference could be drawn that the informant himself was trustworthy," since the information was "forthcoming only after [Lattan] was arrested." (Pet.'s Br., Dkt. 11, at ECF 1652 (internal quotation marks and citations omitted).) Petitioner also argues that "there is no evidence in the record that established that [Lattan's] information prior to [Petitioner's] arrest satisfied the reliability prong of the <u>Aguilar-Spinelli</u> rule." (*Id.*)

Petitioner's argument is unavailing. "When the courts talk about the informant's reliability, they are usually talking about his 'track record', his past performance as a supplier of information." *People v. Johnson*, 488 N.E.2d at 442–43. "But other obvious forms of verification would be an oath or an admission against penal interest which serves the function of an oath. The informant's veracity may also be established by other means showing the reliability of the information itself." *Id.* (internal citations omitted). Though Lattan's statement regarding Petitioner's involvement in the incident shifted the blame of the shooting from Lattan to Petitioner, it nonetheless implicated Lattan in a crime, making it a statement against penal interest. *See People*

---

[12] Though the Supreme Court has since rejected the rigid application of *Aguilar-Spinelli*, *see generally Illinois v. Gates*, 462 U.S. 213, 230–31 (1983), New York "has, as a matter of state constitutional law, rejected this more flexible standard [articulated by the Supreme Court in *Gates*] and continues to adhere to a strict two-pronged test." *Morgan*, 88 F. Supp. 2d at 316.

*v. Calise*, 682 N.Y.S.2d 149, 152 (N.Y. App. Div. 1998) (finding a statement was against penal interest when the informant "admitted to participation in multiple criminal acts of the same variety for which defendant was then under investigation[,] . . . and it is unlikely that an individual in the informant's position would lightly mislead the police") (internal citations omitted); *cf. Delgado v. City of New York*, 928 N.Y.S.2d 487, 494 (N.Y. App. Div. 2011) (finding that a statement is not against penal interest when it only described "unspecified past occasions" of criminal wrongdoing); *United States v. Persico*, 645 F.3d 85, 102 (2d Cir. 2011) (noting that, under Federal Rule of Evidence 804, a statement is admissible if "it tended to subject the declarant to criminal liability" and that "[t]he Rule does not require that the declarant be aware that the incriminating statement subjects him to immediate criminal prosecution") (citing Fed. R. Evid. 804(b)(3)). The potential criminal consequences of Lattan's statement are sufficient to make it reliable for the purposes of *Aguilar-Spinelli*. *See People v. Cantanzaro*, 654 N.Y.S.2d 330, 330–31 (N.Y. App. Div. 1997) (Mem.) ("It is now well settled that the statements of codefendants or accomplices may serve to establish probable cause under the *Aguilar–Spinelli* rule.").

Furthermore, Lattan's statement is independently reliable because the information he provided was confirmed by Detective Beutel's subsequent investigation. Lattan stated that the shooter was a Jamaican man who went by "G" and was employed by Crosslands. (Tr., Dkt. 7-2, at ECF 385; *id.*, Dkt. 7-7, at ECF 1131–33, 1140–41, 1186.) Beutel confirmed this information with Elsayed, Crosslands's general manager, who told Beutel that Petitioner, whose first name starts with a "G," worked there. (*Id.*, Dkt. 7-7, at ECF 1131–33, 1135–36, 1141.) Beutel then placed Petitioner's photo in an array and presented it to Lattan, who identified Petitioner as the June 8, 2010 shooter. (*Id.*, Dkt. 7-2, at ECF 385.) Beutel's ability to confirm aspects of Lattan's statement further indicate that Lattan's statement was reliable. *See People v. Nunez*, 589 N.Y.S.2d

64, 65 (N.Y. App. Div. 1992) (finding probable cause existed, even though the information was provided by another suspect, because "[t]he information provided to the police by the informant . . . included a detailed account of the defendant's alleged role, identification of the crime scene and the defendant's car, and other facts which the police were able to confirm by their own independent investigation and observations"). Lattan's statement, therefore, was reliable pursuant to the test established in *Aguilar-Spinelli*, and provided the police with probable cause for Petitioner's arrest.

Since Petitioner's probable cause claim is meritless, his trial counsel would have no basis for raising such an objection at trial—especially given that the argument had already been raised, explored through eight days of pre-trial hearing, and rejected by the court—and his appellate counsel had no reason to address the lack of such an objection on appeal. *See Flowers v. Ercole*, No. 06-CV-6118 (LTS) (FM), 2009 WL 2986738, at *20 (Sept. 18, 2009) ("Failure to make a meritless argument does not amount to ineffective assistance.") (quoting *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999)); *see also see also Rolling v. Fischer*, 433 F. Supp. 2d 336, 351 (S.D.N.Y. 2006) ("[T]here can be no claim of ineffective assistance of appellate counsel where the underlying claims of ineffective assistance of trial counsel are themselves meritless."). Accordingly, Petitioner's ineffective assistance of appellate counsel claim—based on the failure to raise trial counsel's ineffectiveness for not preserving the probable cause argument—is meritless, and the Court denies *habeas* relief on this ground.

## CONCLUSION

For the reasons set forth above, the petition for a writ of *habeas corpu*s pursuant to 28 U.S.C. § 2254 is denied. Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen. of States of N.Y. and Penn.*, 396 F.3d 207, 209 (2d Cir. 2005) (denying

certificate of appealability where petitioner has not shown that "reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks, ellipsis, and citation omitted).  Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 18, 2020
      Brooklyn, New York